You may proceed. May it please the Court, Marty Weber here on behalf of Appellant Krista Taylor. The question before the Court today is whether an insurer who makes an express promise to pay an insurer sales tax should be held to that commitment. Or framed another way, should an insurance contract that expressly calls for payment of sales tax be afforded a different interpretation than a policy that is silent about sales tax? The answer to both of those questions is yes. When the plain language of the policy expressly contemplates payment, the insurance company should be held to its obligation, and the insured should receive the express policy benefit for which they paid. For these reasons, the order of the District Court should be reversed, and this case should be sent back for further proceedings. I notice, is this a class action lawsuit?  It's a putative class action. A putative class action. And so I take it that this is a case that, I mean, we're sitting in diversity, we're interpreting a Texas insurance policy. I imagine this is a common provision in plenty of Texas insurance policies, I would think. I actually think it's much rarer now because insurance companies, based on some prior decisions of this Court, that found that if sales tax was not expressly called out in the definition of ACV, that there would be no obligation to pay ACV. Most insurance policies have removed this express sales tax language. So most policies being issued in Texas right now are silent. This is what I would call sort of an older residual policy. I think it's actually going to be a small issue because there's very few policies that provide this express policy benefit anymore that are being issued in Texas. Okay. Well, that's interesting. I mean, as I understand the party's arguments, I mean, this comes down to the word applicable. It does. Which is, it's somewhat frustrating for me as a circuit judge, federal circuit judge, thinking, okay, well, you know, it's a Texas law issue. Do we not have any guidance from Texas courts on sort of how this works? I was unable to locate any case in the state of Texas that deals with this particular phrase applicable sales tax. There is in Texas a rule that courts should look to what other jurisdictions are doing when you have similar insurance provisions that are being interpreted in other states. Texas wants, if it can, to be in accord with those other jurisdictions. And here we have two district court opinions, one out of Missouri and one out of the Northern District of Ohio, that both interpreted the provision exactly the way that Krista Taylor offers to the court. Exact same policy language was at issue in both of them, and in both of those cases, the district court held that . . . in those two cases, the Rollins case out of Missouri and Romaniac out of the Northern District of Ohio, in both of those opinions held that applicable sales tax meant that the insurance company owed the sales tax that would be necessary to be paid when the insured used the money that they received from the insurance company to go buy a replacement vehicle. So both of those courts are in accord with what we propose as the proper definition of  In addition, the Wagner case out of Nebraska, that's a state court case, and the Grilla case out of Illinois also, and we have attached those at tabs 8 and 9 of our appendix. Your friend on the other side puts, as I understand it, a lot of emphasis on the administrative code provision here. I forget what the number is. 3.62. There you go, 3.62. That seems to treat a total settlement loss. Is that the right term? Total loss. Total loss. As not an event, I guess, under which sales tax is due. Is that . . . I mean, I'm paraphrasing, of course it says what it says. That is their position. I guess I understand that position, and the other side will be able to speak to this, is that that means that sales tax here is not applicable. What's your response to that? Certainly. First, I would say that both Rollins and Romaniak, the two district court cases, addressed the same thing. There were administrative code provisions in those cases that the insurer argued would eliminate their obligation to pay applicable sales tax. Both of those district courts rejected that. Were the provisions, as you may not agree with the word, were they as clear as the one in Texas? Were they written similarly? They're probably not as clear, but they absolutely would eliminate the obligation. If you followed the facts out in those cases, the way that those administrative provisions were written would have negated any obligation for the insurance company to pay sales tax based on those facts in those cases. And I do, Judge Duncan, want to address that specific question that you have, and I'll address it this way. The district court adopted Root's position that Section 3.62 dictates what sales tax is applicable. The insurance, you need to look at this as two separate transactions. The insurance company, the insurance policy only has two parties. Those two parties are the insurance company and the insured. That's it. It says nothing about the state. Section 3.62 also has two parties. The insurance company and the state. That's it. It says nothing about the policyholder in 3.62. With those two separate relationships in mind, it's possible for two things to be simultaneously true. The insured is owed applicable sales tax by the insurance company when the loss is paid in money, just as the policy states, and the insurance company does not owe sales tax to the state when it takes title to the total loss vehicle. Both of those could be true at the same time. So when you're looking at 3.62, there's nothing in the policy that says, and Root had the ability to write its policy this way. It could have said that 3.62 will define applicable. It could have inserted those words into the policy. It would have said, we will pay whatever applicable sales tax is owed under 3.62. It did not do that. That wouldn't even make any sense. Why would the insurance company, and this is more a question for the other side, I guess, but why would the insurer promise to pay the insured the tax the insurer owes the state? The obligation here is to give sales tax to the insured. To make the insured whole. To make the insured whole. So I don't understand why 3.62 has anything to do with this case, because that controls the relationship between the insurance company and the state. Again, these are probably better questions for the insurance company's lawyer. But, I mean, in your position is the applicable sales tax is the amount that the insured would have to pay to replace her vehicle, correct? That's correct. And I would point the court to the Singleton v. Elephant insurance case. This is a Fifth Circuit case out of 2020. It was a per curiam opinion with judges, with Justices King, Costa, and Ho. This court held that, of course, purchasing and registering the replacement vehicle requires the payment of taxes and fees to the state. So when we look to, when Ms. Taylor looks to the policy, which she purchased, she paid a premium to receive all the policy benefits from that policy, she looks to the clear language it says that when she's paid for her loss in money, and she was paid for her loss in money here, when she's paid for her loss in money, her payment will include applicable sales tax. The Fifth Circuit has spoken to what that applicable sales tax is. It is, of course, purchasing and registering the replacement vehicle requires the payment of taxes and fees to the state. You're putting a lot of weight on the introductory paragraph to a per curiam opinion. It talks about what is likely to happen. Should the tax be paid if the insured should at least wait and see if there's any new car bought? I mean, one of the reasons, it seems to me, that it makes some sense on what the district court did here in interpretation is that because of the nature of the transaction, which is that it's just between the insurer and the insured, there's no purchase of anything. And whether there will be is a question. So why doesn't it make sense that no tax is paid because, in fact, a new car may not be purchased? All that introductory paragraph and elephant about whatever the name of the case is, says is that's likely to happen. That's not a rule of law that helps us, it seems to me. And I agree, it isn't an introductory paragraph, and it does leave open the fact that the insured has to make a future purchasing decision, but we're here today, as Judge Duncan noted, to figure out what does the word applicable mean. We have to give life, according to the Candidates of Construction, we have to give life to that word. And so if we're looking to give life to what the word applicable is, both sides, my side and Root Insurance, are looking outside of the policy to try and give life to the word applicable. I look to the Texas tax code that says that under that 6.25% tax is what is applicable in this particular situation. Root would look to 3.62 under the administrative code. As this Court's well aware in regard to resolving ambiguities in insurance contracts, all ambiguities, if this Court were to find that there is an ambiguity, have to be resolved in favor of the insured. So when you're looking to give life to the word applicable, both parties are looking outside of the contract. By definition, that means that both parties have recognized and realized that just looking to the four corners of the document will not give full life to the word. I look to the Texas, we look to the Texas tax code, and we also look to the language, as Judge Southwick recognizes, that's in the introductory paragraph, and I believe it's in the introductory paragraph, by the way, because it is just a well understood premise that parties are using ACV to replace what they had. And if you look at the Romaniak case and you look at the Rawlings case, they both went through this analysis. Is it a problem for your argument that you just made that if I look at limit of liability in the policy, there's A-1 is ACV, and that's the world that we're in right now. This is an ACV case. But A-2 talks about amount necessary to repair or replace the property. Does that create a sort of a sharp distinction between ACV and repairing, replacing the property? I don't believe that it does. Repair and replace in the context of this policy means when you've taken your car to get it repaired, the insurance company is paying that directly. The replace language, when you look at the policy, means when the insurance company actually has, they actually have the right to buy you a replacement vehicle if they would like. If they buy that replacement vehicle, if you look to 3.62, the replacement vehicle situation, when the insurance company buys it, they would have to pay tax in that situation. That's what the second clause of 3.62 says. So, I believe the ACV situation is talking about when they're paying for the loss in money, and when you go to the express language of our policy, when they pay the loss in money, it has to include applicable sales tax, which here is 6.25%. Did you all argue ambiguity below? We did. And did the district court, or the magistrate judge in this case, analyze the two plausible interpretations of the policy? Judge Lane did work through both of those and did an analysis there. In fact, he did not resolve it on ambiguity though. He simply says, he arrived at the conclusion that as a matter of law, there was only one proper interpretation, only one reasonable interpretation. I would say reading various district court cases from around the country and various state court cases that are arriving at a different conclusion, at a minimum, there's two reasonable interpretations of what the word applicable means. Again, you can't look specifically to the policy to define it, because it is an undefined term that sends you down looking for other reasonable interpretations, and the question is, is Taylor's position and interpretation a reasonable one? And I would argue that it is, based on these four other cases. I would also say that given the party's expectations, Krista Taylor's expectation, when she reads the plain language of the policy, when anyone reads the plain language of the policy, they're going to believe that they're receiving the ACB, and in addition to that, the sales tax for the vehicle that will put them in a position to go buy that vehicle. Again, Root had the ability, they drafted this policy, they could do whatever they wanted with this policy, they could clarify that word, they could amplify that word. They're the ones that left that word to the decisions of the court, and- I mean, your basic point is that the insured is looking at this saying, all right, if my car is damaged and totaled out, they're going to give me the ACB, I'm going to have to take a lot less deductible, I'm going to have to take that, I'm going to have to go buy the car again, but I'm not going to be whole because I have to pay sales tax. That's correct. Okay. Thank you. Go ahead, Counsel. Thank you.  Good morning, Your Honor. David Forkner on behalf of the Applee Root Insurance Company. Beginning with your question, Judge Duncan, there is no Texas case that has addressed this. No. This has been the law in Texas for 40 years under the Administrative Code Section 3.62 that there is no tax owed on a total loss settlement transaction. The rationale for that- So 3.62 says the motor vehicle sales and use tax is not due where there's a total loss settlement. Correct. When it says due, who is it talking to, I guess? Due from whom to whom? Well, the easiest answer to that is due from nobody, but- Well, yeah, yeah, yeah. But- In Judge Kernodle's question, that would be from the buyer, which would be a root in that. Okay. If it was a buy-sell transaction to the state, and I'll address the significance of that throughout the argument. But fundamentally, Texas for 40 years has not treated this type of transaction as a buy-sell transaction. There's no buyer, there's no seller. The insurance company is not buying, the insured is not selling. Sure, but in the second sentence here, the motor vehicle sales and use tax is due when the insurance company purchases a replacement motor vehicle for the insured on a total loss or stolen vehicle claim. In that sentence, due means the insurance company pays the state? The insurance company would pay whoever is selling the replacement vehicle. Okay, I got it, I got it. The insurance company has to put up the sales tax? Correct, and it would depend on whether they're buying from a dealership or a private party, these kind of issues. Okay, so I guess conceptually, we'll get to the language, but if an insurance company instead chooses to give the actual cash value for a total loss vehicle, why wouldn't the natural expectation for the insured be, well, of course that's going to include sales tax because I have to take the money you just gave me and go buy the car? It has to do with the overall structure of the policy, which begins with subsection D. Subsection D is offering reimbursement for loss. The second piece you go to is what is the limitation of liability for the loss? The limitation of liability is also found to be the lesser of ACV minus deductible or repair and replace minus deductible. That then takes us into the world of what is ACV. The policy itself defines how to determine ACV. It doesn't include sales tax. Well, you just jumped, so you jumped, that's the key issue though, right? Does it include sales tax? Right, so the ACV definition has the methodology for determining ACV. It's at ROA 52. That is the same language that the Singleton Court then interpreted as to what does that mean and that it wasn't defined in Singleton, so they looked at the ordinary meaning and they determined that in fact it just means fair market value. And as it means fair market value, the court says specifically that it is expressly or plainly excludes taxes. So we start there. My friend on the other side, their pleadings admit that in Texas, ACV does not include taxes. Yeah. So now we're living in a world in which under the limitation of liability, the insurance company can provide ACV and it does not include taxes. So even if we don't get, to your honor, Judge Knodel, the issue of 3.62, this case can be decided straight on an ACV. Right, that's my question. So if 3.62 didn't exist, you would still argue there is no applicable sales tax because the insurance company doesn't owe any money. So if it's a stolen stereo and you wired Ms. Taylor $500, you would not include the sales tax that she would have to pay to go replace the stereo, correct? That would be correct. Okay. So then when does this apply? It would never apply in an actual cash value loss. It doesn't apply to the lesser of, but here's where it does apply. Okay. So when we look to what is the meaning of the provision in the overall policy, because when interpreting, you can't just look at this in isolation and say what does applicable mean in isolation. You have to look at the entire context of the policy, which is the teachings of the Pan-American equity and a whole host of other cases. So in context, when you're looking at applicable, when does Texas require sales tax in this insurance policy? Let's just start there. So it plainly requires sales tax on the replacement vehicle, and that's found not only in the final sentence of section 3.62. It's also found in the concept of what is a retail sale in Texas, which is 152.021A, which they rely upon. It also applies sales tax when money is paid for a repair. So I have a young driver. I'm learning this. If the car gets wrecked and you go get various estimates, and then the insured provides the estimates to the insurance company, that insurance company then writes the check, pays money directly to the insured. In that case, the check has to include the sales tax for the repairs. So it fundamentally has, it has purpose and meaning. But those are repair and replace scenarios. But there's no language in the policy that I can see that limits its application in actual cash value scenarios. So what it does, again, reading the policy together, it has to have that limitation in the lesser of language. And the case law that is most similar to this was the Texas Supreme Court decision in American Manufacturers Mutual Insurance Company v. Schaeffer. It's a 2003 Texas Supreme Court decision. In that case, what the class action plaintiff's lawyers argued was, after the insurance company had made full repairs of the vehicle, they argued, well, no, you should still pay for the diminished value. So it's kind of backwards. They wanted the value after the repair. And the court said, no, you can't do that because there's a lesser of limitation. And the lesser of limitation on the ACV has to have meaning, such that when you make the two equivalent, you're depriving the insurer of its rights to enforce its option of the lesser. Here how that plays out is if you look at my friend's briefing on page 11, they're fundamentally arguing that the ACV should include sales tax to make it an equivalent transaction as if it was replaced. Now the replacement in their argument is a hypothetical future replacement, which Judge Schaeffer contemplated in this policy at all. You'll see nothing about if you purchase in the future or if someday you're thinking about it, in what amount, whether it be higher or lower, nowhere is that found in this policy. But in order to give the lesser of language meaning under settled Texas law, and my friend argues that we have to look outside the policy, I dispute that. Texas law is incorporated into the policy. So we are within the four corners of the policy with Texas law incorporated therein. We are not looking at anything, any other forms, any other arguments. It's what the policy reads. Now it's an ISO policy. It has to be approved by the Texas Commissioner. It just doesn't get to write whatever it wants. And it does, this policy language has extended in numerous policies over time in Texas. That's outside the record, but to answer your question.  I ask you about Missouri. I think it is in Ohio cases. You say in your briefs that they're distinguishable in a variety of ways. Are they not as good a fit as has been argued here, and why not? Yeah, so with all respect to those courts, I think they're a terrible fit. And so here's some of the reasons why. So in really the case that is driving this was the Romanic case, the Ohio case. That's what started it out. So if you look, that's Judge Barker's opinion, and if you look to page four of that opinion, she starts with the fact that she's not addressing the ACV analysis, right? She says we don't have to address that. I'm going to look at just the language and make it an independent analysis. As soon as you do that, you're violating, in the world of Texas interpretation, basic canons of construction. because you don't look at, in isolation, that's the Farboy 1994 Texas Supreme Court decision. You have to look at it in context. Separately, Judge Barker cites to the Sixth Circuit decision, but doesn't address it. So she says the Sixth Circuit says ACV can be with tax or without. I don't need to look at this issue. If the court reads further down in the Sixth Circuit decision, it comes out just like this court did in Singleton that says no, it doesn't include sales tax. So there's no attempt in Romanic to read this statement in the context of the policy writ large. That's the first problem. The second problem is in these states, and states treat sales tax differently, there is no similar administrative code as 3.62 that says no sales tax is owed. And in fact, in Ohio, if a person gets a replacement vehicle within 30 days, sales tax is owed by the insurer. Missouri's a little different because it offers a tax credit. But the Missouri decision creates the same flaws. That's Judge White's opinion. Judge White's opinion at 4-5 specifically doesn't deal with the ACV limitation. And then the Wagner, the Nebraska court, specifically interprets ACV to include sales tax. And then the Grayla court is a bench memo, so it's quite honestly hard to figure out how that all went down. So I, but there's clearly no reconciliation of the entirety of the policy. Let me ask you this, because I think you were responding to Judge Kernodle's question, and I just want to make sure I understood. I am focused not on actual cash value or lesser of in A1, but under the payment of loss section, where it says if we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property. So I guess my question, again, I don't know if it's the same as Judge Kernodle's question, is if we agree with you that here, I mean, you agree that you paid for the loss in money, right?  So your payment will include the applicable sales tax. You say no, it is not applicable here because, I mean, either because of 3.62 saying there's no transaction here that would allow, under which a sales tax would arise. If that's right, have we then deprived this sentence of any application ever? When is it going to apply? When will there be applicable sales tax if you pay for loss in money? The example that I gave of my teenage driver going to get the estimates on the repairs, and when they pay the money to the- Okay, I get that, except, I mean, payment of loss says we may pay for loss in money or repair or replace. Your example is not a repair or replace scenario? It isn't. It isn't, why is it? Yeah, so for example, if an insurer takes their vehicle to an affiliated shop for an insurance company, like a Geico repair shop, Root repair shop, Root then pays that check directly to the repair shop. So they're not paying it in money to the insurer. Okay, that's a repair or replace scenario. That's a repair or replace. Okay, so the pay for loss in money is- I send you, the insurer, a check so that you can take it to your repair shop. All right, I had it repaired. You're going to pay for that. That payment is payment in money, and it's going to include sales tax.  Or, it could also include, or and, it would also include actual cash value, right? If you look at the first sentence under payment of loss, we may pay for loss in money or repair or replace. The scenario we're talking about here with Ms. Taylor is a pay for loss in money scenario, right? So they did pay the actual cash value in money, that's how it gets paid. But then you have to read that language, both, there's two real responses. Well, then what tax is applicable to that transaction? And we argue there is none, and I'll address that just briefly in a second with further support. Secondly, you have the limitation of liability to the ACV. So those provisions have to be read together. And that's where we look to, again, citing the Schaefer decision for the Supreme Court, making a very similar- You seem to be saying that if we pay for loss in money, is not adding an additional benefit to ACV? Correct. Okay, it's all- The other side is saying, no, there's an additional benefit. Right, they're making an argument there's an independent insurance benefit. Okay. And our argument is no, if you look to the structure of subsection D, which is where all of this comes from, is they're paying for loss. And the limitation of liability is to loss, and when they say when they pay for loss in money, part of the loss will include applicable sales tax. There is no applicable sales tax in ACV, and the one, looking at the foil, the flip side. So where is plaintiff getting meaning to the word applicable if it isn't the Texas legislature, all right? So they first point out, and they go- It's ambiguous. Well, they just argue it's ambiguous, but that's not, it's worse than that, because they specifically says, well, we find it in 152.021A, which is a retail sale. They want the 6.25% on a retail sale. This isn't a retail sale. It doesn't even meet the definition of retail sale, even if you were north 3.62. So then their next argument is like, well, okay, well, maybe then it means the prevailing tax rate. Well, the prevailing tax rate, that's the same foil as they just say it could change, right? So that's still tax on retail sales, but could change. They cite the Texas Emissions Reduction Plan TURP surcharges for diesel vehicles of 14,000 pounds. I mean, this is like the level of stretching we're trying to get to find applicable. And then they offer a new argument, which is like, no, no, what applicable really means is it's talking about the type of damage, the type of the car is what they're saying. It means the car. Well, it's an automotive car insurance policy. It defines the car as the car. It has an exclusion specifically as to things that aren't affixed to the car. There's, it carries no, it does no work if it's just referring to a car in a car policy. So the fallacy is applicable means just what exactly it seems like. If I'm going to sell you anything, if there's a cost plus the applicable tax. And who sets the applicable tax? The state sets the applicable tax. And in Texas, for this type of transaction, there is no applicable tax. Separately, even if there were an applicable tax, they have a limitation of liability. And the limitation of liability says the lesser of ACV, and no one questions that ACV does not include sales tax. So it can't be some independent insurance benefit. And if you wanted to sort of think about this in terms of like, just the overall limitation of liability of the policy itself, which is found in subsection A, there's a $25,000 limit. Now, what if, imagine if your car's worth more than $25,000, but you just got the state minimum. And then you total that car, and they pay you for the $25,000. You don't get $25,000 plus 6.25%. Limitations of liability mean just that. That's the amount that the insurer has to pay. You mentioned earlier that the policy includes language about calculating ACV. Yeah, the methodology of calculation. I had not considered that, and I don't want to take up too much of your time. But does that shed any light on what we're talking about here? Like when you're calculating the ACV of a car, you're obviously not calculating the ACV of a new car. You're calculating whatever the depreciation is and all that. What does it say? So it has the exact same definition as in the Singleton case. Okay. So that's its significance. It is not promising an additional benefit beyond what is now settled taxes. It doesn't say, for example, the amount of money required to replace. No. And in fact, again, if you were going to make the replacement equivalent to the ACV, then there's no lesser of. Yeah. It just means the same thing. And it can't mean that, because you have to give meaning to all the provisions of the contract. Did Root change its policy and take this language out? This policy language, I believe, is still in effect. Okay, but I thought there were two different Root policies in the record, one that includes the language and one that does not. So that has to do with a different fronting company. So it's a different situation. Separately, that 1918 policy, that's the number they assigned to it, technically isn't in the record. And fundamentally cannot be used to create ambiguity in this policy, because it would be an extrinsic evidence. And you don't use extrinsic evidence. I mean, fair enough, fair enough. But do you know, does the 1918 policy take out this applicable sales tax? The 1918 policy is just silent. Just silent. And is there anything in the record about why it was removed? No. Again, it's a different policy. It's for a different kind of a fronting relationship. There's footnotes that plaintiff put in their brief explaining this in like the 10-Ks. It's like complicated. It's outside the record, so I haven't really brought it up. But it's not before the court. It can't be used to create ambiguity. And I think various insurance companies do various different things. This language here, though, is, again, when you look at it all, and you look at the limitation of liability, it has to include the lesser of. Plaintiff argues, in part, that Root did not comply with its indemnity obligation. To that point, the indemnity obligation was fully complied with when they paid her, and it is admitted to, the full ACV of her vehicle. That's what she gets for that policy. You don't get to use equitable principles to change the language of the policy, or to change how it's interlineated to read as a whole. And to the extent there's any disparity between taxes paid on replacement vehicles and taxes not paid on total loss ACV settlements, that's a function of Texas law. Again, it's been that way for 40 years. You know, we talk about Texas law quite a bit, understandably, and yet there's no Texas cases on this. Is there anything we could certify to the Texas? I know nobody's asking for certification, but I'll bring it up anyway. Is there anything we could certify to the Texas Supreme Court here, so that we're not just casting around in the dark? I mean, one could certify his tax owed on a total loss settlement, but I think that's been the law for a long time here. So I don't think there's an independent basis on which you would certify anything. It's just how do you read the policy? And the magistrate did determine that this policy was unambiguous, which is our position. You just read it together. And so what plaintiff doesn't say in any of their briefing is how do you account for the limitation on ACV? How can you give that meaning and effect, and it be the lesser of, if what they're really arguing for is you should pay sales tax, it would be equivalent on a hypothetical future transaction. It's just out there. I think what you're saying is their argument, I don't want to put words in your mouth, with respect to sales tax means ACV is always going to be the amount necessary to replace in a total loss situation. I think what they're going to argue is, because they're constricted with the Singleton decision, they're going to have to take the position that ACV does not include sales tax. But oh, look at this payment provision, that provides an independent benefit. I thought that was the argument, yeah. Right, and then when you put those two together, what you're essentially giving is the effective equivalency of a replacement. And that's where the argument fundamentally breaks down, other than applicable means just what everyone knows it to mean, which is what the state requires, and the state requires different taxes in different settings. And they don't require that here. And there is no, this is not a replacement policy. One can buy policies in the marketplace that if you want full value replacement, you can pay for that, right? And so in that world, you would have a benefit for making you entirely whole in all these different scenarios. Ms. Taylor did not buy that policy. She bought a standard automobile policy, which in subsection D, pays for loss, and loss is limited by a limitation of liability to the lesser, which was paid. There is no language that comes out of that payment provision that provides an additional benefit. And if one looks through the policy generally, when an additional benefit is provided, there's additional limitations of liability on them. So if we're going to provide a rental coverage, you see that in the policy, that's going to be capped at $600. Thank you so much. We'll submit on the briefs. When I started, I said that one of the questions before the court is, should a policy that includes the express words applicable sales tax be interpreted differently than policies that don't? What you've heard today is we have a policy in front of the court that has this express language. In the Singleton case, that language was not in the policy. That was a straight trying to understand what is or is not part of ACV. Your argument is that sales tax is not part of ACV in A1, but that we get to that through the payment of loss sentence that we've been talking about? That's correct. And in addition, there was some questions about the 1918 policy. We have the 1918 policy before the court as Appendix 6. It was referenced in the original complaint. It was dropped in a footnote and discussed in the original complaint. So our position is it's been part of this case from inception. In addition, the court can take judicial notice of it. That form is publicly available through the Texas Department of Insurance. If we agreed with you, I'm looking at a limit of liability A1 and A2, would ACV always be equivalent to the amount necessary to replace a vehicle in a total loss scenario? It would not. You can give life to the ACV definition, and then also look at the payment of loss section and say that the way that route constructed its policy was that an ACV payment would be made, and in addition to that, applicable sales tax would be paid. That's the language. It says payment of loss of money will include applicable sales tax. We have to give life to that phrase here. And I believe you can look to the 1918 policy to see how route writes a policy when they don't want to pay or do not want to be burdened by the payment of sales tax. They write a policy that has the normal ACV definition, but says nothing about sales tax. It creates no additional obligation. The 1918 policy is different in form than the form one policy that Krista Taylor bought. One has language about applicable sales tax, one does not. Route would have this court read those exactly the same. I guess to turn a blind eye to the fact the language applicable sales tax appears in Krista Taylor's policy. I have the same question that Judge Duncan has, or sounds like, that he asked. And I just want to circle back to it because I want to make sure I understand your answer. The effect of what you're arguing would be that the actual cash value for any replacement vehicle would always equal what's in A2, the amount necessary to repair or replace the property, right? I don't believe that's true. What's the scenario where it wouldn't be equal? Well, the scenario that often happens, if anybody on the panel has gone through this and had a total loss and gone to replace a car, you virtually always end up with less money than you need to replace a vehicle. I've been doing this for a long time. That is one of the unfortunate things about insurance. People always end up upside down when they go to replace a vehicle. But applying the definition of ACV, and I'm not making an equitable argument here, I'm just trying to answer the court's question. Applying the definition of ACV, even if you add applicable sales tax, which we believe this policy obligates the insurance company to, in all likelihood, Ms. Taylor, when she goes down to the dealership, is not going to actually have enough money to replace her vehicle. A replacement policy says, go buy whatever you want, and we're going to write you a check for the actual replacement vehicle. So in most circumstances, even if you include sales tax, the insured is still going to be upside down when they go to the dealership. That's why it's not fair, I believe, to say that we are proposing a replacement cost or obligating the insurer to pay replacement cost. We're not. We're simply seeking to hold the insurance company liable for that which it said it would do, which is when it made a payment of loss in money, that it would include the applicable sales tax. Simply holding root to the obligation and the promise that it made in that contract. Thank you. I can keep going if you can. Keep going.